RENDERED: MARCH 10, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0102-MR

ABEL MONSIVAIS GARCIA                                        APPELLANT

v.          APPEAL FROM MCLEAN CIRCUIT COURT
            HONORABLE BRIAN WIGGINS, JUDGE
            ACTION NO. 20-CI-00076

IRMA BRIONES CORONADO                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, JONES, AND LAMBERT, JUDGES.

EASTON, JUDGE: The Appellant ("Abel") questions three decisions of the

McLean Circuit Court regarding division of marital property and custody of the

parties' two minor children. First, Abel argues the circuit court erred in awarding

the Appellee ("Irma") the marital residence. Second, he argues the circuit court

abused its discretion in its overall division of the marital property and debt. Third,

he argues the circuit court erred in determining Irma had overcome the

presumption of equal parenting time and designating her as the primary residential parent. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Abel and Irma were married in 2013 in McLean County, Kentucky. They have two children, who are both still minors. They lived together as a family in Island, Kentucky, until early 2020, when Abel moved to Mexico.

Abel said he thought Irma and the children would, at some point, reunite with him in Mexico. The reunification of the family did not occur, and Irma and the children had no face-to-face contact with Abel for approximately nine months. Irma testified that she did not believe Abel was going to return, and she never had any intention of joining him in Mexico, nor did she indicate that she would. Abel did not provide any financial support to Irma or the children during the time he was in Mexico.

In November 2020, Irma filed a petition for dissolution of marriage. Irma requested sole custody of the two minor children and requested a warning order attorney be appointed to notify Abel of the action, as his precise whereabouts in Mexico were then unknown. At some point in November 2020, Abel returned to Island, Kentucky. In December 2020, Irma filed an amended petition, in which she requested child support and maintenance from Abel.

In late December 2020, the circuit court entered a temporary order

awarding the parties joint custody of the children, with Irma designated as the primary residential parent. The circuit court granted Abel six hours of supervised visitation per week, based on Abel's absence for most of the prior year, Irma's fear that Abel would flee with the children to Mexico, and the children's reservations about visiting with Abel.

Several motions were filed by both parties, and the circuit court held a final hearing in August 2021. After the final hearing, but before the circuit court had entered its ruling, Irma filed a motion to modify *pendente lite* orders in october 2021. In this motion, Irma asked the court to abate any parenting time of Abel until further order because Abel had failed to exercise any of his visitation time after the final hearing. Irma claimed Abel had not shown up for any of the eight Sunday supervised visits.

The circuit court issued its opinion and order on October 26, 2021. The circuit court granted the parties joint custody of their two children and designated Irma as the children's primary residential parent. The circuit court additionally ordered Abel to pay $720.00 in child support each month, based on the parties' incomes. Abel was to be responsible for 60% of costs of reasonable and necessary medical expenses for the children not covered by insurance.

The circuit court denied Irma's request for maintenance. As for the

division of property, the circuit court found that the parties' marital property included a mobile home and land in Island, Kentucky (the "marital residence"), a 2011 Ford Explorer, the 2020 tax refund, Irma's retirement account, and at least one bank account. The circuit court also found that Abel had been in possession of a 2004 F-150 truck, which he had taken to Mexico but had returned without it.

The circuit court granted Irma the marital residence, at least in part because she was named as the children's primary residential parent. The circuit court granted Irma the Explorer. The circuit court granted the entirety of the refund of the 2020 taxes to Irma. Irma's retirement account was to be divided equally between the parties, and each party was awarded his or her bank account and any funds therein as separate property, as well as any personal property they had in their possession.

The circuit court identified certain marital debt subject to division. Abel had tax liability for the years 2018 and 2019, which was assigned to Abel to pay. There was a debt of $3,000 owed to Jose Crus Monsivais, which was the outstanding balance of an $8,000 loan Abel received to pay for the expense of passage back from Mexico into the United States. The circuit court assigned this debt to Abel. There was outstanding medical debt with a balance of $1,220.38 owed to Owensboro Health for medical treatment for Irma and the children. The circuit court assigned this debt to Irma.

On November 3, 2021, Abel filed a motion to alter, amend, or vacate the opinion and order of October 26, 2021. In this motion, Abel asked the court for specific findings and fact and conclusions of law regarding the decision that Irma had overcome the presumption of shared custody outlined in KRS[1] 403.270(2). Abel additionally asserted the circuit court failed to divide the parties' marital property in just proportions as required by KRS 403.190. On November 22, 2021, the circuit court issued a supplemental opinion and order, which outlined the circuit court's findings regarding its previous order.

This last order additionally addressed Irma's motion regarding parenting time and established a temporary alteration of parenting time for Abel. Abel was to have the continued six hours of supervised visitation on Sundays throughout November 2021. Beginning December 1, 2021, Abel was to have unsupervised timesharing with the children each Sunday from noon to 6:00 p.m. Beginning January 21, 2022, Abel was to have timesharing with the children according to the circuit court's standard timesharing/visitation schedule. This order was to be temporary, for a period of six months, and was to become final at that time unless another motion regarding custody or timesharing was brought before the circuit court. On January 19, 2022, the circuit court issued an order denying Abel's motion to alter, amend, or vacate. This appeal follows.

---

[1] Kentucky Revised Statutes.

## MARITAL RESIDENCE

Abel argues the circuit court erred in awarding the marital residence to Irma because the value of the property was unknown. Abel suggests the circuit court should have either: a) obtained an expert to furnish a value or b) directed the property be sold and the proceeds split between the parties. Abel claims because the property's value was unknown, the circuit court did not divide the marital property in just proportion pursuant to KRS 403.190.

Property distribution awards in dissolution of marriage actions are reviewed for abuse of discretion. *McGregor v. McGregor*, 334 S.W.3d 113, 118-19 (Ky. App. 2011). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound reasonable principles." *Penner v. Penner*, 411 S.W.3d 775, 779-80 (Ky. App. 2013). Appellate review of a trial court's factual findings is governed by the clearly erroneous standard; factual determinations supported by substantial evidence will not be disturbed. *Truman v. Lillard*, 404 S.W.3d 863, 868 (Ky. App. 2012). In evaluating abuse of discretion, this Court reviews legal conclusions applied by the trial court *de novo*. *Ehret v. Ehret*, 601 S.W.3d 508, 511 (Ky. App. 2020).

The marital residence in question is a mobile home sitting on between

one and two acres. There are no mortgages or other liens on the home or property. Irma entered evidence the parties paid $12,000 for the mobile home when they purchased it in 2013. She additionally provided evidence the property was presently valued at $12,000 for tax purposes.

Abel testified he installed new siding, new floors, a new roof, and remodeled the bathroom in the mobile home. While this may have increased the value of the mobile home, Abel did not offer any evidence of the value added by the improvements. Irma provided evidence of the home's value. While Abel objected to this evidence, he provided no evidence of his own to counter it. Abel offered no evidence other than his assertions that the work he completed on the home increased its value.

In *Turley v. Turley*, 562 S.W.2d 665, 667 (Ky. App. 1978), this Court allowed the evidence that one party presented as to the value of a mobile home to stand, when the opposing party offered no evidence at all. "This constituted all of the evidence respecting the value of the mobile home and lot. Mrs. Turley offered absolutely no evidence respecting the value of the mobile home and lot. With such scanty proof as to the value of the lot and mobile home and with Mrs. Turley having offered no evidence whatsoever as to value, we cannot find that the value assigned by the trial court was clearly erroneous." *Id.*

In *Stewart v. Stewart*, No. 2002-CA-002008-MR, 2004 WL 68528

-7-

(Jan. 16, 2004),[2] this Court affirmed the trial court's findings of fact for the value of a mobile home when it relied upon a PVA assessment: "the Court could have relied on other evidence and could have reached a different finding. The fact that it did not is not evidence of error, and this issue does not form a basis for tampering with the order and judgment on appeal." *Id.* at \*2.

Abel's counsel referenced *Robinson v. Robinson*, 569 S.W.2d 178, 180 (Ky. App. 1978), in her brief, as well as in her arguments during the hearing on the motion to alter, amend, or vacate. The Court in *Robinson* held that lack of evidence of the value of property in that case made it necessary for the trial court to either obtain an expert or direct the property to be sold. In the present case, the circuit court dealt with a mobile home and a lot with evidence of value provided. Therefore, this Court finds that the circuit court did not abuse its discretion in accepting Irma's evidence of value of the mobile home and the lot upon which it sat and considering this value when dividing marital assets.

"KRS 403.190(1) authorizes the trial court to allow the custodial parent of a child to remain in the marital home." *Spratling v. Spratling*, 720 S.W.2d 936, 938 (Ky. App. 1986). KRS 403.190(1) directs the trial court to divide

---

[2] An unpublished opinion may be considered as permitted by Kentucky Rules of Appellate Procedure ("RAP") 41.

the marital property in "just proportions." *Lawson v. Lawson*, 228 S.W.3d 18, 21 (Ky. App. 2007). The law does not require an equal division of property. *Id.*

KRS 403.190 sets out several factors in considering the division of marital property, including: "(a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker; (b) Value of the property set apart to each spouse; (c) Duration of the marriage; and (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to living therein for reasonable periods to the spouse having custody of the children." KRS 403.190(1)(a)-(d). The trial court has wide discretion in dividing marital property based upon a proper consideration of these factors, and an appellate court should not disturb the trial court's ruling on property division issues unless it finds the trial court abused its discretion. *Davis v. Davis*, 777 S.W.2d 230, 233 (Ky. 1989).

The circuit court accepted Irma's evidence that the value of the mobile home with lot was $12,000 at the time of dissolution. It found that she had paid all costs associated with the home during 2020, which included utilities, insurance, property taxes, and any upkeep. Additionally, Irma was designated as the primary residential parent of the children, and KRS 403.190(1)(d) specifically lists a preference that a party who has custody of the children retain the family

home.  The circuit court did not abuse its discretion in its valuation of the property or in granting the marital residence to Irma.

## DIVISION OF MARITAL PROPERTY AND DEBT

Abel further contests the circuit court's overall division of the parties' marital property and debt.  Their marital assets included the marital residence, Irma's pension, the 2011 Ford Explorer, the tax refund from the 2020 taxes, and the parties' individual bank accounts.  Their debts included tax liability from 2018 and 2019, medical debt, and the remaining debt on a loan from Abel's brother.

Again, "A trial court is to divide marital property in just proportions considering all relevant factors.  However, just proportions does not necessarily mean equal proportions." *Croft v. Croft*, 240 S.W.3d 651, 655 (Ky. App. 2007) (citations omitted).

The circuit court granted Irma the marital residence, the Explorer, the refund from the 2020 taxes, and her individual bank account.  The circuit court ordered Irma's pension be split evenly between the parties.  The circuit court also found that the parties previously had a 2004 Ford F-150, but Abel left it behind in Mexico.  The circuit court did not require Abel to make any equity payment regarding that vehicle to Irma.  It also granted Abel his bank account and any personal property of which he had possession.  As for the debts, the circuit court

-10-

ordered the tax liability and the remainder of the loan to his brother was to be Abel's responsibility, while the medical debt was to be Irma's responsibility.

It was Irma's testimony that in 2018, Abel refused to provide her with his income information for tax purposes. Prior to that year, they had filed jointly. However, once Abel refused to provide his information, Irma filed taxes separately. It is undisputed that Abel was in Mexico for the majority of 2020, and therefore all income reported on that year's taxes was hers. The circuit court found Abel provided no financial assistance to Irma throughout 2020. The tax liability debt was Abel's from his failure to file taxes in 2018 and 2019. It is a logical decision for Abel to be responsible for that debt, and for Irma to be awarded the 2020 refund.

The Explorer was the vehicle that Irma used daily to take the children where they needed to go and to get to and from her job. Irma showed evidence that she alone applied for the loan for the Explorer, and she paid off the loan during 2020 when Abel was in Mexico. Payments for the vehicle were taken from her bank account. This vehicle was clearly meant to be Irma's vehicle. Despite not having a valid U.S. driver's license, Abel did previously own a 2004 F-150, which he testified that he drove in Mexico, but did not return with it. Regardless of what happened to the vehicle, the circuit court found that the vehicle was Abel's. We do not find that the circuit court abused its discretion in making this property division.

Irma's pension was to be split evenly between the parties. This is an equitable distribution. The entire pension was accumulated during the marriage.

The circuit court ordered the medical debt of Irma and the children was to be her sole responsibility in the division of the debt. The remaining debt is a balance on a loan that Abel's brother made to him to get back into the United States. Abel was to be responsible for that debt.

Unlike assets, there is no presumption that debts incurred during the marriage are marital. *Maclean v. Middleton*, 419 S.W.3d 755, 773 (Ky. App. 2014). The party claiming that a debt is marital in nature has the burden of proof. *Id.* In making this determination, the circuit court should consider several factors, such as receipt of benefits, extent of participation, whether the debt was incurred to purchase marital assets, whether the debt was necessary to provide for the family, and the parties' economic circumstances. *Id.* In this case, Abel's loan from his brother was not marital in nature. Abel alone decided to go to Mexico, and he alone decided taking a loan from his brother to come back into the country (illegally) was the best way to return. The circuit court did not abuse its discretion in assigning this debt to him.

"A family court operating as finder of fact has extremely broad discretion with respect to testimony presented, and may choose to believe or disbelieve any part of it. A family court is entitled to make its own decisions

-12-

regarding the demeanor and truthfulness of witnesses, and a reviewing court is not permitted to substitute its judgment for that of the family court, unless its findings are clearly erroneous." *Bailey v. Bailey*, 231 S.W.3d 793, 796 (Ky. App. 2007). Having reviewed the record, we do not find that any of the circuit court's findings were clearly erroneous or that there was any abuse of discretion regarding property division and debt allocation.

## PRESUMPTION OF EQUAL PARENTING TIME

Abel's final assertion is the circuit court erred in its determination that Irma had overcome the presumption that equal parenting time between the parties is in the best interest of the children. "We first acknowledge that the equal timesharing presumption of KRS 403.270(2) is new to Kentucky and unique among the custody laws of other states, thereby limiting the precedent available to us. However, we believe that our canons of statutory construction, combined with our timesharing precedent, can resolve this issue. For example, we 'must interpret the statute according to the plain meaning of the act and in accordance with the legislative intent.'" *Layman v. Bohanon*, 599 S.W.3d 423, 430 (Ky. 2020) (citing *Floyd Cnty. Bd. of Educ. v. Ratliff*, 955 S.W.2d 921, 925 (Ky. 1997)). This issue is one of statutory interpretation, and we therefore review it de novo. *Id.* at 429.

The circuit court outlined several factors for its conclusion that Irma had overcome the presumption of equal timesharing. Prior to leaving for Mexico,

-13-

it appears Abel and the children had a good relationship. Even so, the circuit court found Irma had been the children's primary caretaker since birth. Irma was the one who tended to their medical needs, school-related needs, and their general daily needs.

Abel did not know who the children's doctors or teachers were. The circuit court also found Abel works very long hours, including on weekends during parts of the year, while Irma has a predictable set schedule. Abel left the family for much of 2020 and had very little contact with them during that time. Upon his return, he did not exercise his full visitation with them and appeared uninterested in engaging with the children during those visitation times. While it did appear to the circuit court that the relationship was improving, Abel did not give the circuit court the opportunity to have an additional hearing to alter the timesharing, as this appeal was filed prior to the finalization of the last temporary order addressing parenting time.

The circuit court took all the factors of KRS 403.270 into account when making its ruling. The relevant factors of KRS 403.270(2) are: "(a) The wishes of the child's parent or parents . . . as to his or her custody; (b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes; (c) The interaction and interrelationship of the child with his or her parent or parents, his or her

-14-

siblings, and any other person who may significantly affect the child's best interests; (d) The motivation of the adults participating in the custody proceeding; (e) The child's adjustment and continuing proximity to his or her home, school, and community; (f) The mental and physical health of all individuals involved; and . . . (k) The likelihood that a party will allow the child frequent, meaningful, and continuing contact with the other parent . . . ."

"While the new version of KRS 403.270(2) puts a finger on the scale in favor of joint custody and equal timesharing by requiring only a preponderance of evidence to overcome, such a preference is a slight burden and the trial court continues to possess broad discretion in determining the best interest of the child as to who should have custody and where the child shall live. . . . That discretion is not altered by the change in KRS 403.270(2) once an appropriate ground is established in favor of deviation from 50/50 timesharing." *Barnett v. White*, 584 S.W.3d 755, 761 (Ky. App. 2019) (footnotes and citations omitted).

## CONCLUSION

The McLean Circuit Court's findings of facts are supported by the evidence and thus not erroneous. The circuit court committed no error of law and properly acted within its discretion. The McLean Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:        BRIEF FOR APPELLEE:

Donna M. Dant            Karey L. Roy
Calhoun, Kentucky        Madisonville, Kentucky